UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JUSTIN LEE THOMAS,

      Petitioner,

v.                                  Case No.  5:15cv114/RH/CJK

JOHN A. BARFIELD,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1), with an amended supporting memorandum (doc. 17).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 35).  Petitioner replied.  (Doc. 37).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY[1]

In the summer of 2011, petitioner was charged with the following crimes in three Washington County Circuit Court cases: (1) dealing in stolen property (Case No. 2011-CF-158); (2) burglary of a dwelling and grand theft (burglary of Gwen Lane Collins' residence on May 4, 2011) (Case No. 2011-CF-215); and (3) burglary of a dwelling and grand theft (burglary of Frank and Elizabeth Konefal's residence on May 19, 2011) (Case No. 2011-CF-216). (Doc. 35, Ex. N, pp. 157, 161, 164 (charging documents).[2] Petitioner's maximum possible sentences for the charges, combined, totaled 55 years in prison. *See* Fla. Stat. § 812.019, § 810.02, § 812.014, § 775.082; *see also* Ex. A (plea agreement); Ex. B, p. 5 (plea colloquy).

On November 18, 2011, petitioner executed a counseled, negotiated plea agreement whereby he agreed to plead no contest to all charges with an adjudication of guilt, in exchange for the State recommending a total sentence of 10 years in prison to resolve all charges. (Ex. A). The plea agreement was memorialized in a

---

[1] This Report and Recommendation provides a very condensed procedural history. A more extensive history of petitioner's pre-and post-judgment proceedings and filings is provided in respondent's answer (doc. 35, pp. 2-4) and, as relevant, in the court's discussion of particular claims.

[2] References to exhibits are to those provided at Doc. 35, unless otherwise noted. When a particular page of an exhibit has more than one page number, the court references the number appearing at the bottom left corner of the page.

written Plea, Waiver and Consent form signed by petitioner, defense counsel and the prosecutor. (*Id.*). Petitioner entered his no contest plea in open court. (Ex. B). The court conducted a plea colloquy, found petitioner's plea knowingly, intelligently and voluntarily entered, accepted petitioner's plea, adjudicated petitioner guilty of the five crimes, and sentenced petitioner consistent with the plea agreement to a total term of 10 years in prison. (Ex. A (plea agreement); Ex. B (plea colloquy); Ex. C (judgments)). Petitioner did not appeal from the judgments. (Doc. 1, p. 3).

On February 21, 2012, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended. (Ex. F; Ex. J; Ex. L). The state circuit court struck petitioner's original, first amended, and second amended motions as facially insufficient with leave to amend. (Ex. I; Ex. K; Ex. M). Upon petitioner's filing a third amended motion raising ten grounds for relief (Ex. N, pp. 99-148), the circuit court summarily denied grounds 2, 3, 4, 6 and 8, and directed the State to respond to grounds 1, 7, 9 and 10. (Ex. N, pp. 149-200, through Ex. O, pp. 201-204). After the State responded, the state circuit court summarily denied grounds 1, 7 and 9, and ordered an evidentiary hearing on ground 10. (Ex. O, pp. 311-400, through Ex. P, pp. 401-479). After hearing where petitioner was represented by counsel (Ex. Q, pp. 544-571), the circuit court denied ground 10. (Ex. P, pp. 480-516). The Florida First District Court of Appeal (First DCA)

affirmed, per curiam and without a written opinion.  *Thomas v. State*, 158 So. 3d 571

(Fla. 1st DCA 2015) (Table).  The mandate issued March 17, 2015.  (Ex. U).

Petitioner filed his federal habeas petition on May 18, 2015.  (Doc. 1, p. 1).

The petition raises four claims of ineffective assistance of trial counsel.  (Doc. 1).

Respondent asserts that petitioner is not entitled to habeas relief because the state

court's rejection of the claims was consistent with clearly established federal law.

(Doc. 35).

## RELEVANT LEGAL PRINCIPLES

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody

pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death

Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19.

Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits in
> State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved
> > an unreasonable application of, clearly established Federal law,
> > as determined by the Supreme Court of the United States; or
>
> > (2)  resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the evidence
> > presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes

during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1).

The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If

this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel in the Context of a No Contest or Guilty Plea

When a petitioner challenges the voluntariness of his plea based on allegations of ineffective assistance of counsel, the two-prong standard adopted in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies. *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *see also Premo v. Moore*, 562 U.S. 115, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011) (identifying *Strickland* as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain). To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In a plea situation, the focus of inquiry under the performance prong of *Strickland* is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56-57 (*quoting McMann*, 397 U.S. at 771). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting

effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland* at 689. The Supreme Court has expressly warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann*, 397 U.S. at 769-70. Counsel must provide advice "'within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56 (*quoting McMann*, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991). Absent such blatant errors, the court should "indulge a strong presumption that counsel's conduct fell

within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of *Strickland* in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. Thus, while counsel can be deemed ineffective under *Strickland* for failing to provide proper advice during the plea process, petitioner must also demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 58-59. "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was

unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105.

As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## DISCUSSION

<u>Ground One</u>    <u>"Counsel failed to investigate exculpatory evidence and/or favorable witnesses on Appellant's behalf."</u>  (Doc. 1, p. 6).[4]

Petitioner challenges his no contest plea on the ground that he "had 2, known favorable witnesses who would have testified on his behalf and presented exculpatory evidence", but counsel failed to investigate them.  (Doc. 1, p. 6). Petitioner identifies the favorable witnesses as Cathy Sasser (petitioner's mother) and Whitney Thompson.  (*Id.*).  Petitioner identifies the exculpatory evidence as "pictures and letters".  (*Id.*).  Petitioner asserts that he raised this claim in his third amended Rule 3.850 motion.  (Doc. 1, p. 7).  Respondent argues that petitioner

---

[4] Citations to page numbers of the petition are to those appearing at the top right corner of the page.

exhausted only that portion of his claim relating to counsel's failure to investigate Cathy Sasser, the photographs and letters, and that he procedurally defaulted that aspect of his claim concerning counsel's investigation of Whitney Thompson, because he failed to present it to the state court.  (Doc. 35, pp. 13-15).

A.    Procedural Default of Claim Concerning Failure to Investigate Whitney Thompson

Before bringing a habeas action in federal court, the petitioner must exhaust all state court remedies available for challenging his conviction, either on direct appeal or in a state postconviction proceeding.  28 U.S.C. § 2254(b), (c).  To satisfy the exhaustion requirement, the petitioner must present each habeas claim to the state court "such that a reasonable reader would understand [the] claim's particular legal basis and specific factual foundation."  *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal quotation marks omitted).  "The 'fair presentation' requirement is designed to ensure that state courts have the opportunity to hear all claims."  *French v. Warden, Wilcox State Prison*, 790 F.3d 1259 (11th Cir. 2015) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971)).  "'[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously.'" *Ogle v. Johnson*, 488 F.3d 1364, 1369 (11th Cir. 2007) (*quoting Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992)).  Procedural default arises when the petitioner

fails to exhaust state remedies for his claim, and the state court to which he would be required to present the claim would now find it procedurally barred. *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). To overcome a procedural default, the petitioner must demonstrate either: (1) cause for the failure to properly present the claim, and actual prejudice from the default; or (2) a fundamental miscarriage of justice that would result if the claim is not considered. *Id.* at 1306.

Contrary to petitioner's assertion, he did not raise the issue of counsel's failure to investigate Whitney Thompson in his third amended Rule 3.850 motion, or in any other state court proceeding. Petitioner's third amended Rule 3.850 motion asserted as Ground 1 that petitioner told trial counsel he and his mother Cathy Sasser would testify favorably for the defense and, in addition, his mother would produce photographs establishing that the jewelry petitioner was charged with stealing belonged to her deceased husband. (Ex. N, pp. 100-102). Petitioner alleged that trial counsel refused to contact Ms. Sasser for the stated reason that "the Defendant had urinated in someone's cereal in Washington County and there are some people in high places that do not like Defendant and wish to put Defendant in prison for the rest of defendant's life." (Ex. N, p. 101). Petitioner's Ground 1 of his third amended Rule 3.850 motion also alleged that he informed counsel he would testify at trial that he did not commit the crimes and that he could produce one or more letters from his

co-defendant Lisette Owens admitting to committing the burglary with another person (Marley Owens) and not petitioner. Petitioner's third amended Rule 3.850 motion made no mention of Whitney Thompson as a proposed defense witness. (Ex. N, pp. 100-102). Petitioner's failure to present this aspect of his claim to the state court renders it unexhausted.

Any present attempt by petitioner to return to state court to exhaust his ineffective assistance claim concerning investigation of Whitney Thompson would be procedurally barred as untimely and successive under Florida rules of procedure. *See* Fla. R. Crim. P. 3.850(b), (h); *see also LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n. 25 (stating that the Eleventh Circuit has "already concluded that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under the applicable law." (*citing Whiddon v. Dugger*, 894 F.2d 1266, 1267-68 (11th Cir. 1990))). Petitioner has made none of the requisite showings to excuse his procedural default. Petitioner's procedural default bars federal habeas review of his ineffective assistance claim concerning proposed witness Whitney Thompson.

B.    Review of State Court's Decision Concerning Failure to Investigate Cathy Sasser and Lisette Owens' Letters

Petitioner raised his claim concerning counsel's failure to investigate Cathy Sasser and Lisette Owens' letters as Ground 1 of his third amended Rule 3.850

motion.  (Ex. N, pp. 100-102).  The state circuit court summarily denied relief by

order rendered January 10, 2014, as follows:

> In **Ground 1**, Defendant alleges that counsel was ineffective for her failure to investigate exculpatory evidence and/or witnesses on his behalf in violation of Defendant's constitutional rights.  In his motion, Defendant alleges before his plea on November 18, 2011, he advised counsel that there were witnesses on Defendant's behalf that would prove to a jury that he was innocent of the crimes he was charged [with].  Specifically, Defendant provided the names of Kathy Sasser, Defendant's mother, who would have testified that the jewelry stolen belonged to the Defendant's deceased step father, "Teddy Sasser", and not the victims.  Next, the Defendant stated that he himself would have testified on his own behalf and submits that he would have presented a letter from "Lisette Owens", who wrote to him admitting to committing the crime of burglary with another person and the Defendant had nothing to [do] with the crime.
>
> In this ground, the Defendant is essentially challenging the voluntariness of his plea that occurred on November 18, 2011.  However, a review of the attached transcript from the defendant's plea and sentencing hearing shows the circumstances surrounding the plea and the colloquy between the Defendant and the Court which reflects that the plea was freely and voluntarily entered.  Furthermore, a defendant's guilty or no contest plea cuts off all inquiry into matters that precede it.  Thus, a Defendant is barred from contesting events happening before the plea.  _See Smith v. State_, 41 So. 3d 1037 (Fla. 1st DCA 2010); _See also Clift v. State_, 43 So. 3d 778, 2010 WL 2976929 (Fla. 1st DCA 2010) citing _Stano v. State_, 520 So. 2d 278, 279-280 (Fla. 1988) and _Davis v. State_, 938 So. 2d 555, 557 (Fla. 1st DCA 2006).  Additionally, the Court notes that the transcript from the plea and sentencing hearing clearly reflects that the Court advised and the Defendant acknowledged that he understood that he had the right to confront and call witnesses at trial; that Defendant had the right to testify at his trial; and that by entering his plea, he waived any possible defenses he might have to the charges.  (_See_ attached Plea Colloquy Transcript, at pp. 5-7).  Finally, Defendant replied in the affirmative

that he had enough time to talk with his counsel before entering his plea about these cases.  (*See* Transcript at pg. 5).

The Court's order filed February 19, 2013 directed that the State was to respond to the Ground "to the extent that Defendant is alleging that counsel failed to investigate and/or advise him that there were viable defenses to the charges, that he could not have been found guilty of the charges, and that if counsel had properly informed him of this, he would not have entered his plea."  (*See* attached Court's Order Denying In Part Third Amended Motion for Post Conviction Relief and Order Directing State to Respond at p. 2).  However, the Defendant claims that he knew, prior to entering the plea, that the testimony of his mother, and his own testimony, including testifying about a letter and photographs, could exonerate him and that he made this known to counsel.  The Defendant chose to enter a plea knowing that this alleged evidence existed, and stated on the record that he was satisfied with the services of his attorney.  (*See* transcript of plea/sentencing hearing at p. 5).  The Court informed him that he had the right to present any witnesses and evidence on his own behalf at trial and that he had the right to testify at trial, a decision that would be his alone.  (*Id.* at p. 6).  The Defendant stated that he understood that by entering the plea, he was giving up those rights.  (*Id.*).  He now claims that his attorney would not contact his witnesses and she acted ineffectively.  However, he knew of counsel's alleged ineffectiveness at the time he entered the plea, and chose to do so anyway, representing to the Court that he was satisfied with counsel's services.  This is similar to what occurred in *Davis v. State*, 938 So. 2d 555 (Fla. 1st DCA 2006), where the Court found the following: [block quotation from *Davis*, 938 So. 2d at 556-557, omitted].  Here, as in *Davis*, the Defendant knew of counsel's alleged deficiencies at the time of the plea but chose to enter the plea anyway, and represented to the Court that he was satisfied with her services.  He cannot now assert that, at the time of the plea, he had serious doubts about her effectiveness.

Furthermore, the record refutes the Defendant's contention that counsel did not investigate these witnesses.  In the defendant's Response to State's Demand for Discovery, [defense] counsel listed "Cathy Sasser" as a defense witness.  (*See* attached Defendant's

Response to State's Demand for Discovery).  Counsel deposed Lisette Owens.  (*See* attached deposition transcript).  The Defendant claims that, had counsel conducted an investigation and deposed his "witness(es)" and prepared for trial, and had a jury heard the testimony of his mother, himself, and seen the letters and shown the pictures, the evidence would have produced an acquittal.  The defendant ignores the fact that he gave a lengthy confession in which he specifically admitted entering and burglarizing one of the houses, and admitted that he could have burglarized the other house but did not remember due to alcohol and prescription drug intoxication.  He also admitted making numerous trips to pawn stores in Chipley, Panama City, and Dothan and pawning jewelry that was connected to the burglaries.  (*See* attached statements to police).  There were many pieces of jewelry stolen in these cases, and additional property including a video camera, not just the necklaces which the Defendant claims his mother could have testified about.  In regards to Lisette Owens claiming in letters to defendant that she and another person committed a burgalry that he was charged with, the Court would note that, when under oath in both her sworn statements and her deposition, Owens implicated the Defendant in the burglary.  (*See* attached police statements and deposition transcript).  In Owens' deposition, counsel asked her about the letters to the Defendant, and she explained that she just wrote that Marley had committed the crime to cover for him.  (*See* attached deposition transcript at p. 2).  She stated that the letters were not true and that it was not Marley.  (*Id.*).  Counsel specifically asked her, "So if I were to have to present them in the trial, you would explain those letters away by saying . . . You were just trying to get him out of trouble?", and Owens responded, "Yes ma'am."  (*Id.* at p. 3).  Unlike the sworn statements to police and the deposition, any statements she may have made to the defendant in letters were not under oath.  Additionally, Owens entered into a plea agreement in which she agreed to testify truthfully.  (*See* attached plea agreement from Washington County case no. 11-175CF).  This demonstrates that she would have testified in accordance with her sworn statements and deposition.  As she stated in her deposition, she would have explained at trial that what she said in the letters to the defendant was not true and was an attempt to cover for him.  Given everything outlined above, the Defendant has not demonstrated deficient performance by counsel or resulting prejudice.

(Ex. O, pp. 312-314) (footnote omitted).  The First DCA summarily affirmed. *Thomas v. State*, 158 So. 3d 571 (Fla. 1st DCA 2015) (Table).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's summary affirmance, which is the final state court adjudication on the merits of petitioner's claim concerning counsel's failure to investigate Sasser as a defense witness.  *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (defining the relevant decision for purposes of § 2254 review as the state appellate court's summary affirmance of the lower tribunal's decision), *cert. granted*, No. 16-6855, 2017 WL 737820 (U.S. Feb. 27, 2017).  Where, as here, "the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in *Richter*." *Wilson*, 834 F.3d at 1235.  The *Richter* test provides that "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief."  *Richter,* 562 U.S. at 98.  "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision;

and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." *Id.* at 102.

Under the *Richter* test, petitioner must establish that there was no reasonable basis for the First DCA to deny relief on this claim. In reviewing the reasonableness of the First DCA's decision, this court may, but is not required to, look to the reasoning of the state court below (the state circuit court). The Eleventh Circuit explained in *Wilson*:

> When the reasoning of the state trial court was reasonable, there is necessarily at least one reasonable basis on which the state [appellate] court could have denied relief and our inquiry ends. In this way, federal courts can use previous opinions as evidence that the relevant state court decision under review is reasonable. But the relevant state court decision for federal habeas review remains the last adjudication on the merits, and federal courts are not limited to assessing the reasoning of the lower court.

834 F.3d at 1239.

The First DCA reasonably could have adopted the state circuit court's factual findings, because the record amply supports them. *See* 28 U.S.C. §§ 2254(d)(2) and (e). The record conclusively refutes petitioner's allegation that counsel failed to investigate his mother Cathy Sasser as a defense witness and the photographs she possessed, and that counsel failed to investigate co-defendant Lisette Owens and her letters to petitioner. Defense counsel investigated both sources of defense evidence

prior to entry of petitioner's plea, and petitioner was aware of the viability (or lack thereof) of a defense based on that evidence. (*See* Ex. N, pp. 168-169 (Defense counsel's response to State's demand for discovery listing Cathy Sasser as a defense witness); Ex. P, pp. 417-463 (Lisette Owens' sworn statements to police); Ex. P, pp. 464-469 (Defense counsel's deposition of Lisette Owens, including questioning about the letter she wrote to petitioner)). The state circuit court reasonably determined that defense counsel's investigation of petitioner's proposed defense evidence was objectively reasonable.

The state circuit court also was not unreasonable in determining that petitioner failed to establish prejudice. The record establishes that prior to entering his plea, petitioner was fully aware of the existence, availability and strength of the defense evidence he now proposes, and that he chose to enter the plea despite that evidence, because the plea agreement was in his best interest. It is far from clear from this record that petitioner might have preferred to risk receiving 55 years in prison (with sentence enhancements, as discussed later) as opposed to securing a 10-year, unenhanced sentence by entering the negotiated plea. The state circuit court did not unreasonably determine that petitioner failed to carry his burden of showing prejudice.

The state circuit court's analysis was reasonable and provides at least one reasonable basis on which the First DCA could have denied relief. The First DCA's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of *Strickland*. Petitioner is not entitled to habeas relief on Ground One.

Ground Two        "Counsel failed to prepare for trial as requested. (Ground 7) of 3.850". (Doc. 1, p. 8).

Petitioner's second habeas claim is essentially a reiteration of Ground One. Petitioner faults trial counsel for failing to interview and investigate Whitney Thompson (mentioned above) and "Marley" (the person Lisette Owens identified in her letter to petitioner as having committed the crimes). (Doc. 1, p. 8). Petitioner also faults counsel for failing to move to compel the State to provide discovery earlier than it did, and for failing to provide petitioner with available discovery. (*Id.*). As discussed in Ground One, that portion of petitioner's claim relating to counsel's failure to investigate Whitney Thompson is procedurally defaulted, because petitioner did not include Whitney Thompson in his claim to the state courts and is barred by state procedural rules from returning to state court to do so. *See* discussion *supra* Ground One, Subpart A. Neither Ground 1 nor Ground 7 of petitioner's third amended Rule 3.850 motion mentioned Whitney Thompson. (Ex. N, pp. 100-102, 110-112). Respondent concedes that petitioner exhausted the remaining portion of

his claim concerning counsel's investigation and preparation of a defense by raising it as Ground 7 of his third amended Rule 3.850 motion. (Doc. 35, pp. 21-23).

The state circuit court rejected petitioner's Ground 7 for the same reasons it rejected Ground One, above, stating, in relevant part:

> [T]his is essentially the same claim the Defendant made in Ground 1, and should be denied for all the reasons stated therein. Counsel did investigate the Defendant's evidence, listing his mother as a defense witness and taking a deposition of Lisette Owens in which she specifically asked Owens about the letters. . . . The Defendant knew of theses alleged deficiencies at the time he entered the plea, and chose to do so anyway. Defendant cannot now assert that his plea was not knowingly and voluntarily entered where he concedes he was well aware of his counsel's deficiencies prior to the entry of his plea. *Davis*, 938 So. 2d at 557. Furthermore, as noted above, the Defendant represented to the Court that he was satisfied with counsel's services. He cannot now assert that at the time of the plea's entry he had serious doubts about his attorney's effectiveness. *Id*. This Ground is also due to be denied.

(Ex. O, p. 315). The First DCA summarily affirmed. *Thomas v. State*, 158 So. 3d 571 (Fla. 1st DCA 2015) (Table).

Again, the relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's summary affirmance, which is the final state court adjudication on the merits of petitioner's claim. *Richter*, 562 U.S. at 99. Under the *Richter* test, petitioner must establish there was no reasonable basis for the First DCA to deny relief.

Petitioner has not met his burden under *Richter*. As discussed above, the record conclusively refutes petitioner's allegation that counsel failed to investigate

Cathy Sasser and Lisette Owens' letters identifying "Marley" as the perpetrator of the burglaries. Defense counsel deposed Lisette Owens and specifically asked her about the letters:

> Q [Defense Counsel]: Okay. Now, with Justin at the jail, he showed me letters that you have written where you've indicated it wasn't him but it was Marley. Tell . . . tell me about that,
>
> A [Lisette Owens]: That there was just to kind of cover his butt.
>
> Q: So does that . . .
>
> A: I . . . I have all of the letters at home that we have written back and forth. So . . .
>
> Q: Okay. Well, he showed me those and was saying that you were blaming Marley for everything. So you need to make it clear what you mean about . . .
>
> A: That was to cover him.
>
> Q: So at this time you're not . . . you're saying those letters were not true?
>
> A: Yes.
>
> Q: Okay. It was not Marley?
>
> A: No.
>
> Q: Okay. The girl who just left . . . okay. Were you ever asked about that before now by anybody about those letters?
>
> A: No ma'am.

Q:  So if I were to have to present them in the trial, you would explain those letters away by saying . . .

A:  Yes ma'am.

Q:  You were just trying to get him out of trouble?

A:  Yes ma'am.  I mean . . . as I knew it, according to Sgt. Brock, he [petitioner] had gotten into the house.  He had broken into the house, which I didn't know until when they had stopped us and they said that there was certain items taken from the house and they said the video camera.  And when he brought out the video camera, I was like, well, that's the video camera that came out of the house that he came around the house with.

(Ex. P, pp. 466-67).  Defense counsel also deposed Marley Owens – just prior to Lisette Owens.  (Ex. N, pp. 170-171 (noticing Marley Owens' deposition for November 16, 2011, at 2:30 pm, and Lisette Owens' deposition for November 16, 2011, at 3:00 pm)).

Petitioner has not demonstrated that defense counsel's investigation and defense preparation was objectively unreasonable, or that counsel had a viable basis to file a motion to compel discovery.  Petitioner also has not shown that had counsel conducted more discovery or filed a motion to compel, there is a reasonable probability he would have rejected the State's 10-year plea offer and gone to trial.

The First DCA's rejection of petitioner's ineffective assistance claim was not contrary to or an unreasonable application of *Strickland*.  Petitioner is not entitled to habeas relief on Ground Two.

Ground Three          "Counsel failed to file a Demand for Speedy Trial.  (Ground 9)
of 3.850".  (Doc. 1, p. 9).

Petitioner claims trial counsel was ineffective for failing to file a Demand for
Speedy Trial.  (Doc. 1, p. 9).  Respondent concedes that petitioner exhausted this
claim, but contends that the state court's rejection of it was consistent with
*Strickland*.  (Doc. 35, pp. 23-27).

Petitioner presented this claim as Ground 9 of his third amended Rule 3.850
motion.  The state circuit court first clarified that petitioner's claim involved a
failure to file a Demand for Speedy Trial under Fla. R. Crim. P. 3.191(b), not a
failure to file a Notice of Expiration of Speedy Trial under Fla. R. Crim. P. 3.191(a).
(Ex. O, p. 315).  The court explained why there would have been no basis for
counsel to file a Notice of Expiration of Speedy Trial under Fla. R. Crim. P.
3.191(a).  (Ex. O, pp. 315-316).  As for a Demand for Speedy Trial, the state circuit
court rejected petitioner's ineffective assistance claim, explaining in pertinent part:

> As to the Defendant's assertion that counsel should have filed a
> demand for speedy trial, requiring the State to bring him to trial within
> 50 days, he has not alleged any prejudice from counsel's failure to do
> so.  Even in the context of the 15-day recapture period, a defendant
> must show that the State could not have brought the defendant to trial
> within the recapture period, and allege a specific factual basis for this
> claim, in order to demonstrate prejudice.  *Hammond v. State*, 34 So. 3d
> 58 (Fla. 4th DCA 2010).  Here, the Defendant has not alleged, and
> cannot show, that, had counsel filed a Demand for Speedy Trial, the
> State would not have been able to bring the Defendant to trial within 50
> days.

Furthermore, a Demand for Speedy Trial "shall be considered a pleading that the accused is available for trial, has diligently investigated the case, and is prepared or will be prepared for trial within 5 days." Fla. R. Crim. P. 3.191(g). The Defendant claims that he asked counsel to file a Demand on August 29, and September 21, 2011. However, the record reflects that counsel was not appointed to represent the Defendant until August 10, 2011. She filed a Notice of Appearance on August 12. (*See* attached Order Appointing Counsel; Notice of Appearance). As counsel stated in her letter responding to the Defendant's Bar complaint against her, which the Defendant has attached to his Amended Motion, she explained to the Defendant at their meeting on August 29, that she could not legally or ethically demand a speedy trial at that time, as she had limited evidence, but that once she had gotten the evidence and gone over it with him, she could demand a speedy trial if it was possible. (Exhibit A to the Defendant's Motion, at p. 7). As to September 21, counsel stated that the Defendant wrote her a letter asking again about a demand for speedy trial. However, she also noted that in this letter he gave her his mother's name and address as a possible witness. (*Id.* at p. 8). The Defendant could not expect counsel to demand a speedy trial certifying that she would be ready for trial within 5 days, while at the same time providing her with the name of a witness to investigate. Counsel stated that she explained to the Defendant on September 26 that she had no discovery of worth except the statements of Lisette and Marley Owens. (*Id.*). The Defendant cannot demonstrate deficient performance by counsel in failing to file a Demand for Speedy Trial in August or September 2011, and he has not even alleged any prejudice from her failure to do so. This claim is also due to be denied.

(Ex. O, p. 316). The First DCA summarily affirmed. *Thomas v. State*, 158 So. 3d 571 (Fla. 1st DCA 2015) (Table).

The state circuit court's analysis was reasonable, and provides at least one reasonable basis on which the First DCA could have denied relief. Defense

counsel's explanation for not filing a Demand for Speedy Trial is set forth in her response to petitioner's Florida Bar complaint, and is reasonable. (*See* Ex. N, pp. 129-41 (Letter from Crystal J. Marsh, Office of Criminal Conflict and Civil Regional Counsel to Anne-Marie Martinez, Bar Counsel (Mar. 2, 2012))). On this record, this court cannot conclude that counsel's decision to not file a Demand for Speedy Trial in August and September 2011, fell below the wide range of competence demanded of attorneys in criminal cases. Petitioner has not overcome the presumption that his lawyer rendered adequate professional assistance and made all significant decisions in the exercise of reasonable professional judgment. In addition, as the state circuit court noted, petitioner makes no showing that he was prejudiced by counsel's failure to file a Demand for Speedy Trial.

The First DCA's rejection of petitioner's ineffective assistance claim was not contrary to or an unreasonable application of *Strickland*. Petitioner is not entitled to habeas relief on Ground Three.

<u>Ground Four</u>          "Counsel provided bad and unreasonable advice at a critical time. (Ground 10) of 3.850". (Doc. 1, p. 11).

Petitioner's final claim challenges the validity of his plea on this basis:

> Counsel advised defendant that he would not win at trial because of the involvement of Inv. Mark Collins and his relation to the victim and sheriff's dept. Mark Collins had involvement in the case directly related to Gwen L. Collins. Counsel had no discovery of worth to

determine any outcome. Counsel gave bad advice at a critical time with
a time line to determine.

(Doc. 1, p. 11). Respondent concedes that petitioner exhausted this claim by raising

it as Ground 10 of his third amended Rule 3.850 motion. (Doc. 35, p. 29).

Respondent argues that petitioner is not entitled to relief because the state court's

rejection of the claim was consistent with *Strickland*. (Doc. 35, pp. 29-31).

Petitioner presented this claim as Ground 10 of his third amended Rule 3.850

motion, and the state circuit court held an evidentiary hearing on the claim. (Ex. O,

p. 317 (order granting limited evidentiary hearing). Petitioner was represented by

counsel at the hearing. (Ex. Q, pp. 544-71 (transcript of January 24, 2014,

evidentiary hearing)). After hearing, the circuit court denied relief as follows:

> In **Ground 10**, the Defendant alleges that counsel was ineffective
> for providing him with unreasonable advice which affected the
> outcome. A review of the attached transcript from the Defendant's plea
> and sentencing hearing shows the circumstances surrounding the plea
> and the colloquy between the Defendant and the Court and reflects that
> the plea was freely and voluntarily entered. . . .
>
> On January 24, 2014, the Court conducted a limited evidentiary
> hearing. Specifically, the Court considered testimony from both the
> Defendant, and his trial counsel, Crystal Marsh. In considering both
> the demeanor and credibility of the witnesses, the Court finds that the
> Defendant's instant ground is due to be denied. As to the allegations
> raised in Ground 10, that counsel advised that he could not win at trial
> regardless of the evidence Defendant had because of the involvement
> of Sgt. Mark Collins and his relationship to the victim and the Sheriff's
> Department[,] [a]ccording to the Defendant's own testimony, that was
> not something trial counsel ever directly told him. Rather, it was a

concern Defendant had in his own mind with his interaction with Sgt. Mark Collins. Although Defendant expressed some concern with trial counsel that there could be some prejudice, trial counsel investigated that position in depositions. However, Sgt. Mark Collins was not the lead investigator in the case involving his cousin, and kept his distance. But, Sgt. Collins was involved in the other criminal charges related to the Defendant.

As to the Defendant's allegations that he would get 55 years if convicted, trial counsel did inform Defendant of his maximum sentence if he went to trial, which is a proper performance by counsel. Trial counsel indicated that she did not know what Defendant would receive if he went to trial. In fact, Defendant's minimum scoresheet was 55 months up to 55 years in prison. Thus, defense counsel acted in a proper manner by informing her client of the minimum and maximum sentence he could receive if he proceeded to trial.

Finally, the State's evidence against the Defendant in the above styled cases was overwhelming and extensive including a post *Miranda* confession by the Defendant to law enforcement. Further, the Defendant was facing a habitualized sentence due to his criminal record. In fact, the Defendant's original plea agreement with the State included a ten year DOC mandatory minimum sentence, with the understanding that he would have to stipulate to being a Habitual Felony Offender (HFO) and a Prison Releasee Reoffender (PRR). Trial counsel relayed that offer to the Defendant. However, the Defendant ultimately agreed to a ten year DOC sentence without any habitual or sentencing enhancement instead of serving the day for day ten year prison sentence. Based upon the foregoing, the Defendant's allegations are without merit and he is due no relief.

(Ex. Q, pp. 481-482). The First DCA summarily affirmed. *Thomas v. State*, 158

So. 3d 571 (Fla. 1st DCA 2015) (Table).

The First DCA reasonably could have adopted the state circuit court's factual

findings, including its credibility determinations, because the record amply supports

them.  *See* 28 U.S.C. § 2254(e); *see also Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.").   In light of the forgoing facts, the First DCA reasonably could have concluded that petitioner failed to establish deficient performance and prejudice under *Strickland*.  Petitioner has not shown that the advice counsel actually provided concerning Sgt. Collins' involvement and petitioner's sentence exposure was not "within the range of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 771; *Hill*, 474 U.S. at 56-57 ("[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.'"  (*quoting Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973))).  In addition, petitioner makes no showing that he was prejudiced by counsel's investigation and advice concerning Sgt. Collins or petitioner's sentence exposure.

The First DCA's rejection of petitioner's ineffective assistance claim was neither contrary to, nor involved an unreasonable application of, the *Strickland* standard.  Petitioner is not entitled to federal habeas relief on Ground Four.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774, 197 L. Ed. 2d 1 (2017) (*quoting Miller-El*, 537 U.S. at 327).  The petitioner here cannot make that showing.  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should

issue." Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgments and sentences in *State of Florida v. Justin Lee Thomas*, Washington County Circuit Court Case Nos. 11-CF-158, 11-CF-215 and 11-CF-216, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 12th day of July, 2017.


*/s/* *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.